**1:23-CV-00651**



RECEIVED AK

2/1/2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **VANESSA WEREKO**, in her individual capacity<br>   *Plaintiff,* | ) | |
|       vs. | ) | |
| | ) | **JUDGE PACOLD**<br>**MAGISTRATE JUDGE COLE** |
| **WESTWARD360,** Property Management Company, | ) | |
| | ) | |
| **ERIC STASZCZAK**, Executive VP for Westward360, | ) | |
| | ) | **Case No. 1:23-cv-596** |
| **ANDREW GIRARD,** The Girard Law Group PC, | ) | |
| | ) | |
| **BOARD OF GREENVIEW GARDENS**<br>**CONDOMINIUM ASSOCIATION:** | ) | **Hon**. |
|       **CEDTRICE R. BAKER**, President | ) | |
|       **DEREK SMITH**, Treasurer | ) | **Demand for Jury Trial** |
|       **LILIAN ANN KHATTER**, Secretary, | ) | |
| | ) | |
| **JAMES R. WRIGHT,** Associate Judge in Cook County, | ) | |
| | ) | |
| **E. KENNETH WRIGHT Jr.**, Judge in Cook County, | ) | |
| | ) | |
| **CHRIST STACEY**, Judge in Cook County, | ) | |
| | ) | |
| **GRETCHEN L. PETERSEN**, Clerk of Court-Cook County, | ) | |
| | ) | |
| **RICARDO LUGO**, Clerk of Court-Cook County, | ) | |
| | ) | |
| **MATTHIAS DELORT**, Justice in 1st Dist. Appeals Court, | ) | |
| | ) | |
| **MAUREEN CONNORS**, Justice in 1st Dist. Appeals Court, | ) | |
| | ) | |
| **LEROY K. MARTIN JR.**, Justice in 1st Dist. Appeals Court, | ) | |
| | ) | |
| **JESSE G. REYES,** Justice in 1st Dist. Appeals Court, | ) | |
| | ) | |
| **JAMES L. BENNETT**, Director, IL Human Rights Dept., | ) | |
| | ) | |
| **ANGELA WAGNER**, Investigator, IL Human Rights Dept., | ) | |
| | ) | |
|    *Defendants.* | ) | |

# VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE AND COMPENSATORY RELIEF

## I.   INTRODUCTORY STATEMENT / NATURE OF ACTION

1.  VANESSA WEREKO ("VANESSA") is an American-born citizen and a minority woman, who has been subjected to and continues to be subjected to violations under the Fair Housing Act and "false or misleading representations [] from [Defendants] engaging in various abusive and unfair practices" relative to real property located in Cook County, Illinois for which she has an ownership interest.

2.  Vanessa, in her individual capacity, brings this action for Declaratory Judgment and Permanent Injunction, pursuant to 28 U.S.C. §§ 2201-2202 and 42 U.S.C. § 1983, and for actual and punitive damages, costs and fees to progress this lawsuit.

3.  According to Fed. Civ. P. Rule 9(b) for Pleading Special Matters:

    9(b) FRAUD OR MISTAKE; CONDITIONS OF MIND. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

4.  Some of the Defendants are state judicial officers; the allegations including fraud or mistake are provided with supportive facts, as required by Fed. Civ. P. Rule 9(b).

## II.   JURISDICTION AND VENUE

5.  This Court has jurisdiction over Vanessa's claims brought pursuant to 28 U.S.C. §§ 2201-2202, the Declaratory Judgment Act.

6.  This Court has jurisdictions over claims under the Fair Housing Act, Fair Debt Collection Practices Act, Illinois Human Rights Act, which relies on the Civil Rights Act and Fourteenth Amendment Due Process Clause of the Constitution.

7.  Venue is proper in this district because:

(a) The Northern District of Illinois is the judicial district in which substantially all the events or omissions or violations giving rise to Vanessa's claims occurred; and

(b) Defendants are found or are employed, at the time of the incidents giving rise to this suit, in the Northern District of Illinois.

### III.   PARTIES

8. Plaintiff, **VANESSA WEREKO** ("Vanessa" or "Plaintiff") resided in the village of Vernon Hills in Lake County, Illinois as of 2014. Prior to, she bought property, a condominium in Cook County, Illinois located at "7639 N. Greenview Ave. 1E, Chicago, IL, 60626" ("Unit"), and retained an ownership interest during the relevant times of the actions complained of herein.

9. Defendant, **BOARD OF GREENVIEW GARDENS CONDOMINIUM ASSOCIATION ("BOARD")**, is made up of members of the Homeowners Association ("HOA") for GREENVIEW GARDENS CONDOMINIUM ASSOCIATION ("GREENVIEW") for the property located at 7633-7639 North Greenview Avenue, Chicago, Illinois, 60626, including the Unit. The members of the BOARD are defined in the Greenview Gardens Condominium: Rules and Regulation" and at the relevant times of the actions complained of herein the members were:

   a. **CEDTRICE R. BAKER** ("**BAKER**") as President, who is currently located at address 1264 W. Northshore Avenue, Apt. 1, Chicago, IL 60626, She is sued in her/their official and individual capacity;

3

    b. **DEREK SMITH** ("**SMITH**") as Treasurer, who is currently located at address 6139 W. Gunnison Street, Chicago, IL 60630 and sued in his/their official and individual capacity; and

    c. **LILIAN ANN KHATTER** ("**KHATTER**"), as Secretary who is currently located at address 7456 N. Clark St., Suite O, Chicago, IL 60626. She is sued in her/their individual and official capacity.

10. Defendant, **WESTWARD360** ("**WESTWARD**") also known as **WESTWARD PROPERTY MANAGEMENT** is the property management company hired by the BOARD for GREENVIEW since August 2015 and is currently located at 1464 West Webster Avenue, Suite B, Chicago, Illinois, 60614 with Executive Vice President of Property Management, **ERIC STASZCZAK** ("**STASZCZAK**"). WESTWARD's previous address was 4311 North Ravenswood Avenue, Chicago, Illinois, 60613. For the relevant times of the actions complained of herein, WESTWARD was responsible "the furnishing of facilities or services in connection []with" GREENVIEW, including but not limited to for updating and furnishing copies of the "Greenview Gardens Condominium: Rules and Regulations" to homeowners and/or their agents, for assigning their employees and/or contractors as property managers, which for GREENVIEW included KENDRA SHEETZ ("SHEETZ"), COREY OUELETTE ("OUELETTE") AND PORTIA GALLOWAY ("GALLOWWAY"). WESTWARD is sued in its official and individual capacity.

11. Defendant, **ANDREW GIRARD ("GIRARD")** is the lawyer hired by the BOARD for GREENVIEW, who initiated the debt-collection litigation in Cook County Circuit Court's Municipal Division, Case No. 2020 M1 700013. GIRARD is a

founder/partner/member of THE GIRARD LAW GROUP currently located at the same address as WESTWARD360, specifically, 1464 W Webster Avenue, Suite B, Chicago, Illinois, 60614 and also had the same previous address, at 4311 North Ravenswood Avenue, Chicago, Illinois, 60613. He is sued in his individual capacity.

12. Defendant, **HONORABLE JAMES R. WRIGHT ("JWRIGHT")**, is an Associate Judge, in the Cook County Circuit Court's Municipal Division, Forcible Entry and Detainer Section, located in the Richard Daley Center, 50 W. Washington Street, Room 1302, Chicago, Illinois, 60602, who was appointed in 2018. At all relevant times of the actions complained of herein, he presided over Case 2020 M1 700013, and had the responsibility of enforcing federal and state statutes including but not limited to the Fair Housing Act, Forcible Entry and Detainer Act, Condominium Property Act and to ensure due process of law for all with no fraud or extortion, civil rights violations or constitutional deprivations of parties before him. He is sued in his official and individual capacity.

13. Defendant, **HONORABLE E. KENNETH WRIGHT JR. ("KWRIGHT")** is the Presiding Judge of Cook County Circuit Court's Municipal Division, located in the Richard Daley Center, 50 W. Washington Street, Room 1303, Chicago, Illinois, 60602, who was assigned as presiding judge of Municipal Division in 2003. At all relevant times of the actions complained of herein, he had responsibility to review applications for waiver of court fees by indigent/destitute parties in the division's cases, to assign judges to cases including to Case 2020 M1 700013, with other administrative and supervisory responsibilities including oversight of judges in the Municipal Division to respect constitutional rights, due process of law and to take

necessary measures when upon violations of applicable state and federal statutes such as the Fair Housing Act, Forcible Entry and Detainer Act, Condominium Property Act. He is sued in his official capacity.

14. Defendant, **CHRIST STACEY ("STACEY")**, is an elected judge in the Cook County Circuit Court's Municipal Division, Forcible Entry and Detainer Section, located in the Richard Daley Center, 50 W. Washington Street, Chicago, Illinois, 60602, who was appointed in 2018. At all relevant times of the actions complained of herein, he presided over Case 2020 M1 700013, and he had the responsibility of enforcing federal and state statutes including but not limited to the Fair Housing Act, Forcible Entry and Detainer Act, Condominium Property Act and to ensure due process of law for all with no fraud or extortion, civil rights violations, or constitutional deprivations of parties before him. He is sued in his official and individual capacity.

15. Defendant, **GRETCHEN L. PETERSON ("PETERSON")** is currently the Assistant Chief Deputy Clerk of the Cook County Circuit Court's Domestic Relations Division located in the Richard Daley Center, 50 W. Washington Street, Room 802 Chicago, Illinois, 60602 who was appointed into this position in 2021. For part of the relevant times of the actions complained of herein for Case No. 2020 M1 700013, she was the Deputy Clerk of the Civil Appeals Division of the same court with the responsibility of ensure no alteration, tampering, deletion of any part of the record of cases in Cook County Circuit Court to be prepared, certified and timely transmitted to the First District Appellate Court for review nor to aid/abet or fail to report any

activities to derail or attempt to derail an appeal. She is sued in her official and individual capacity.

16. Defendant, **RICARDO LUGO ("LUGO")** is the Chief Deputy Clerk of the Cook County Circuit Court's Civil Appeals Division located in the Richard Daley Center, 50 W. Washington Street, Chicago, Illinois, 60602 who replaced the previous person in that position, PETERSON, in 2021. At all relevant times of the actions complained of herein relative to Case No. 2020 M1 700013, he had the responsibility of ensure that there is no alteration, tampering, deletion of any part of the record of cases in Cook County Circuit Court to be prepared, certified and timely transmitted to the First District Appellate Court for review nor to aid/abet or fail to report any activities to derail or attempt to derail an appeal. He is sued in her official and individual capacity.

17. Defendants **HONORABLE MATTHIAS DELORT** ("**DELORT**"), **HONORABLE MAUREEN CONNORS** ("**CONNORS**"), **HONORABLE LEROY K. MARTIN JR.** ("MARTIN"), **HONORABLE JESSE G. REYES** ("**REYES**") are justices in the First District Illinois Appellate Court, located in the Michael Bilandic Building at 160 North La Salle Street, 14th Floor, Chicago, Illinois, 60601. At all relevant times of actions complained of herein, including their assignment to review Case 2020 M1 700013 (under Appellate Case 1-21-0222), they each had a responsibility to enforce applicable federal and state statues including but not limited to the Fair Housing Act, Forcible Entry and Detainer Act, Condominium Property Act and to not participate in discriminatory practices, vet or coverup acts of fraud, extortion or constitutional deprivations. Each is sued in his/her/their official and individual capacity.

18. Defendants, **ANGELA WAGNER** ("**WAGNER**") and **JAMES L. BENNETT** ("**BENNETT**") are officials of the ILLINIOS DEPARTMENT OF HUMAN RIGHTS ("IDHR") at address 555 West Monroe Street, 7th Floor, Chicago, IL 60661. At all relevant times of the actions complained of herein, WAGNER was a Human Rights investigator of the Fair Housing Unit of the IDHR and had a responsibility to interview identified persons in a complaint, review submitted evidence and present charges of discrimination before the Illinois Human Rights Commission. **BENNETT** was the Director of the IDHR with the responsibility to ensure that the IDHR fulfills its mandate to address fair housing violations and/or human rights violations in Illinois. Both WAGNER and BENNETT had a responsibility to enforce federal and state statutes including the Fair Housing Act and Illinois Human Rights Act to promptly investigate and timely initiate civil actions to address violations irrespective of the clout of the alleged violators. WAGNER is sued in her official and individual capacity. BENNETT is sued in his official and individual capacity.

## IV. STATEMENT OF FACTS:

### A. TIMELINE – FAIR HOUSING ACT VIOLATIONS (2019 – Ongoing)

#### 1) Defendants GREENVIEW, WESTWARD, JWRIGHT, STACEY, WAGNER, BENNETT

19. In September 2019, in exercise of her fair housing rights, Vanessa rented out the Unit to a tenant (of a protected class), hereinafter TENANT #1, and notified GREENVIEW through its agent **WESTWARD** to facilitate the move-in procedures, as part of the services it provides to GREENVIEW.

20. The Unit includes storage space #8 housed in one of the common elements of the condominium building and part of the lease between Vanessa and TENANT #1. On information from TENANT #1 and verified by Vanessa, use and access of the storage space was barred to Vanessa and TENANT #1 with a lock placed on the same.

21. To avoid any claim of vandalism to access her storage space in the common element, Vanessa contacted WESTWARD, via its assigned property manager OUELLETTE, for removal of the lock to allow access to TENANT #1 with rights of use per the lease.

22. From October 2019 until January 2020, when TENANT #1 chose to exit the lease and not pay the rent, storage space #8 remained locked/inaccessible and OUELLETTE's willful negligence, to have an alleged maintenance person remove it, continued.

23. In that time, OUELLETTE chose, on behalf of the **BOARD**, to retain the legal service of **GIRARD** for a demand for possession of the Unit with Vanessa misrepresented as resident overseas, that is not in the continental US much less in the state of Illinois.

24. From court documents that Vanessa became privy to later (see ¶64 herein), the Notice and Demand for Possession of the **BOARD** is dated November 22, 2019 to "Unknown Occupants" and Vanessa is never served as misrepresented as resident overseas.

25. The Notice and Demand for Possession is signed by OUELETTE, on behalf of the **BOARD**, and the Certificate of Mailing is signed by an agent of **GIRARD**.

26. After TENANT #1's exit, Vanessa notified **WESTWARD**, via OUELLETTE of her intent to put the Unit on sale, introduced the Illinois real estate agent who will be assisting her exercise her fair housing rights to sell the Unit and informed of her intent to pay the assessment due that month, as impacted by the departure of TENANT #1.

27. In January 2020, whiles Vanessa is trying to sell the Unit, **GIRARD** initiated a debt collection litigation with a complaint signed by OUELLETTE, on behalf of the **BOARD**, Case No. 2020 M1 700013, alleging $4,176.38 of unpaid assessments.

28. Like the unserved Demand for Possession, the Complaint drafted by **GIRARD** misrepresents Vanessa is resident overseas and the Unit abandoned with no monthly assessment payments.

29. On February 13, 2020, after OUELLETTE is notified of the intended sale of the Unit, she signed an affidavit, filed by **GIRARD** in the lawsuit, to aver "[Vanessa] cannot be found after diligent inquiry" to request "service by posting" to the alleged overseas address.

30. **GIRARD**'s due diligent effort for service of summons was one attempt by a Cook County Sheriff to the Unit, which said Sheriff claimed (in an affidavit) is part of a gated property, at 7633-7639 N. Greenview Avenue in Chicago, inaccessible with the gate locked and did not find Vanessa on the intercom for residents at the property.

31. **JWRIGHT** granted **GIRARD**'s request for service by posting to the alleged overseas address after one service attempt to the Unit by the Cook County Sheriff.

32. In March 2020, OUELETTE sent an electronic notification with title "Greenview Gardens: Association possessed unit/disclosure" which stated in relevant part: "[p]lease note – under **Board** directive and with the assistance of **Girard Law Group**, the Association has taken legal possession of a delinquent unit in an effort to rent the space and collect the owed funds. There's obviously more complexity to it but privacy rights limit my ability to provide full details."(emphasis added)

33. On belief OUELETTE's correspondence referred to the vacant Unit with knowledge the most recent assessment payment to WESTWARD was never acknowledged as received with no mailed account statements, Vanessa responded:

> "Is the below notification some kind of a joke? On what authority are you assuming possession of my unit? It is this kind of unorthodox and borderline criminal behavior that has me wanting out of the association. I will not be granting access to my unit and if you in any way attempt to take over or do [] break in, please be prepared for the full exercise of the law.
> *Please provide me a PDF copy of my payments to my account to-date*; please try not to exclude the almost $900 payment made recently.
> Please note that neither Westward Management nor the association can unilaterally take access without order of the court and IF you did get such an order and did so without servicing me, I will take the appropriate legal action and request related fees." (Emphasis Added)

34. In discourse, Vanessa found in addition to the monthly assessments for which she was current, other unnoticed charges had been made to the Unit's account, which were never brought to her attention prior to or after charge, in the ongoing lack of mailed account statements for the Unit since **WESTWARD** took over from its predecessor.

35. With no account statements from **WESTWARD** to warrant what was allegedly owed, on March 17, 2020, Vanessa sent in good faith to **WESTWARD**, attention of OUELLETTE, a cashier's check of $4,066.72 payable to GREENVIEW. The payment is sent by third-party courier with signature required. The delivery is signed for by R. CELLINI of **WESTWARD** on March 18, 2020 at 10:18 AM CST.

36. The $4,066.72 cashier's check transmission included a notarized and signed affidavit by Vanessa that states in relevant part:

> "1. I am the unit owner for 7639 N. Greenview Ave., #1E, Chicago, IL 60626.
> 2. I have been resident in the State of Illinois, County of Lake since 2010.
> 3. I provided my contact information including mailing address to the property management company of Greenview Gardens Condominium Association.

4. I have made in-person visits to Westward Property Management located at 4311 N Ravenswood Ave in Chicago, as recent as December 2019, and maintain contact with Corey Ouellette, Property Manager, directly and through my agent, Brian Aurelio.

5. On March 11, 2020, Corey Ouellette sent me an email about initiating collections.

6. I have not been provided proper notice nor properly served any documents.

7. My recent payment on my account, sent to Westward Property Management, was $855.00 in February 2020 and $200 in November 2019.

8. On March 17, 2020, I sent a letter to Corey Ouellette with a cashier's check enclosed, check no. 642075 for $4,066.72 payable to "Greenview Gardens Condominium Association" by FedEx #: 770041379383 with signature confirmation on delivery.

9. The $4,066.72 payment settles my account in full for all valid account charges including monthly association fee ($231.78) and monthly late fee ($25.00) through March 2020 and pre-pays the monthly association fee for the month of April 2020.

Further Affiant Sayeth Naught."

37. The notary public on Vanessa's March 17, 2020 dated affidavit sent to **WESTWARD** is a notary public for the State of Illinois based in Lake County, Illinois.

38. Despite **WESTWARD**'s receipt of the cashier's check payment and the notarized affidavit, it chose not mail to Vanessa the Unit's account statements despite her Illinois mailing address was known and imprinted on all payments and correspondences to WESTWARD.

39. On belief what was alleged by **WESTWARD**'s agent was true and the cashier's check payment that it signed receipt for on March 18, 2020 settled any "valid" other charges on the Unit's account, Vanessa safely rented out the Unit to a tenant (of a protected class) hereinafter TENANT #2 after difficulties to show the Unit during the pandemic.

40. To avoid a repeat loss of another tenant loss due to the still inaccessible storage space #8, on April 19, 2020, Vanessa successfully sent a fax to **WESTWARD** with subject, "RE: 7639 Greenview Ave. Unit 1E, Chicago, IL 60626" that stated in relevant part:

"Pursuant to the email I sent to Corey Ouellette on April 18, 2020, as enclosed, *I am sending this fax message to make doubly sure the matter of my storage unit, #8, does not fall through the cracks again* and is addressed regardless of the disposition of Corey Ouellette as your (ex) employee.

In addition, on March 18, 2020, a FedEx with enclosed correspondence, also enclosed, and *cashier's check for $4,066.72 was sent to your address, attention of Corey Ouellette, and successfully received by you with signature confirmation.*

In that transmission, I asked that you mail me a hard copy of my updated account statement. I am still not in receipt over a month since your confirmed receipt on March 18, 2020. Please address the same promptly as well." (Emphasis Added)

41. **WESTWARD** did not respond to the April 19, 2020 fax nor did OUELLETTE to the referenced correspondence, about storage space #8 in the common element.

42. In the ensuing silence from **WESTWARD**, Vanessa sent another support request. On April 21, 2020, OUELLETTE responded to inform **WESTWARD** will not address the storage space access issue in the common element after representing, since September 2019, that WESTWARD would and provides that service. OUELLETTE directed Vanessa to hire her own locksmith and break the lock on the storage space, which Vanessa undertook to ensure TENANT #2's right of use of the space so there would be no deprivations to coerce out of the Unit.

43. On June 26, 2020, Vanessa was forced to contact **WESTWARD** relative to an issue of only hot water coming out of the bathroom faucet of the Unit. Vanessa contacted WESTWARD on belief such matters involving shared water pipes sits firmly with services they provide for GREENVIEW. **WESTWARD** informed Vanessa that they do not provide services for such matters, and it is Vanessa's responsibility to hire her own service provider to address, similar to the locked storage space issue prior.

44. Consequently, Vanessa sought out certified third-party service providers, one of whom was vetted and known by an agent in **WESTWARD** to resolve the water issue for TENANT #2 and confirmed expertise to handle pipes in the common elements.

45. From June 26, 2020 to October 8, 2020, after a series of actions by **WESTWARD** starting with communications with OUELLETTE, GALLOWAY and other agents in WESTWARD who were allegedly operating under the directives of a member of the **BOARD**, the vetted third-party service provider and other certified providers hired by Vanessa, were all obstructed from repairing the water issue as the (frustrated) third-party service providers were denied access to shut off water to the Unit to repair.

46. Repelled by the ad hoc, undocumented and changing requirements by **WESTWARD,** paid third-party service providers left, on arrival, after being supplied one excuse after another that obstructed the repair work in the Unit, including the excuse that a **BOARD** member will be inconvenienced despite prior and proper notice sent to GREENVIEW days prior of the scheduled repair. In due course, no third-party service provider wanted to return to contend with the same obstructions by **WESTWARD**.

47. In the ensuing lost costs, lost time, lost third-party service providers and a frustrated TENANT #2 forced to subsist in the Unit with hot water only from the bathroom faucet, Vanessa filed a Complaint with the ILLINOIS HUMAN RIGHTS COMMISSION ("COMMISSION") to seek prompt address for the ongoing human rights violations directly impacting the safety and well-being of TENANT #2.

48. The Complaint to the COMMISSION was acknowledged as received and sent to the ILLINOIS DEPARTMENT OF HUMAN RIGHTS ("IDHR"), under **BENNETT** who assigned **WAGNER** as the investigator.

49. In the Complaint and follow-up interview with **WAGNER**, Vanessa provided *inter alia* information about the loss of TENANT #1; the ongoing safety issues for TENANT #2; the withholding of property management services by **WESTWARD**, with ad hoc changes to alleged and undocumented policies frustrating/obstructing Vanessa's bid to maintain the Unit which was motivated by an intent to discriminate as said acts had not been displayed, to her knowledge, to other unit owners in GREENVIEW who, at the time of purchase of the Unit, were predominantly "white" making her one of, if not the only, "black" owner. Vanessa complained similar act had not been shown to members of the **BOARD** whose directives, displeasures or impulses were alleged by **WESTWARD** for the route changes to prior communicated procedures and requirements, just when Vanessa had met them, to deny her the requested services, in repeat interference of her protected activity under the FHA for the Unit and its tenants.

50. Vanessa's complaint also informed the discriminatory acts were with intent to oust tenants, of a protected class, in the Unit and referenced the threat by **WESTWARD** prior, to take possession of the Unit and the ongoing lack of acknowledgement of assessment payments for the Unit, including the $4,066.72 cashier's check alleged as owed, with no mailed account statements despite several requests to WESTWARD.

51. **WAGNER** proceeded to completely re-word Vanessa's original complaint claiming her changes strengthened it and "[s]ome changes [requested by Vanessa] were made and some were not…and all of the specific details will be included in the investigation report.". Over one (1) year later, WAGNER's May 19, 2022 dated investigation report came with a "*Notice of Dismissal for Lack of Jurisdiction and Lack of Substantial*

*Evidence for Cases Involving Real Estate Transactions*" with its coined Counts A-H, never prior shared with Vanessa, where Counts B, D, F, and H were dismissed alleging "lack of jurisdiction" and Counts A, C, E and G were dismissed alleging "lack of substantial evidence."

52. Before WAGNER's investigation report arrived to inform IDHR will not address the FHA violations, **WESTWARD** in concert with **GIRARD** got an invalid eviction order, despite no assessments owed on the Unit and during the federal moratorium on evictions, provided by **JWRIGHT** and **STACEY** abetting the FHA violations in the courtroom; TENANT #2 is coerced out of the Unit, in the pandemic, with the water issue never resolved and still unresolved due to the unaddressed FHA violations.

53. In addition to the invalid eviction order, **STACEY** rewarded **GIRARD** with attorney fees and costs of $3,054.18 for bringing the tortious lawsuit against Vanessa without serving her a Demand for Possession for the Unit or the **BOARD**'s complaint, based on **WESTWARD** fabrications (in an affidavit) and GIRARD's fabrications in signed court filings that Vanessa resided overseas, in disregard of public information, correspondences and Vanessa's in-person visit to WESTWARD's Chicago office.

54. **WAGNER**'s investigation report dismissing the FHA violations excluded the eighty-nine (89) pieces of evidence submitted by Vanessa in support of her complaint, with dated correspondences and names of the persons involved. The investigation report is based on alleged interviews with persons unknown to Vanessa and never identified in the original complaint nor in the submitted evidence, whiles the persons identified in the original complaint and submitted evidence were excluded, such as **BAKER**

stripped out on the alleged discovery by WAGNER that she is "black" informing of an intent to favor her and distance her from the discrimination charges.

55. On November 25, 2020, weeks after WAGNER's re-wording of the original complaint and Vanessa's request for changes were ignored, she advised **WAGNER** of yet another impact to her fair housing rights:

> "I recently put through a rental application for a place. I was just alerted by the property management company that they noted an eviction notice on my credit file in January 2020 and because of that they are going to have to deny my application.
> I alerted them that even though the association may have done whatever it appears they did in January, not only was I not given notice but I am not aware of any judgment after whatever notice was posted on my credit file in January.
> I need to know if this is an addition for my current complaint since this just came to my attention that the association had put this on my credit file in January 2020, without notice or a court judgment, and that it is costing me my ability to get a rental, or if this merits me [submitting] a new complaint." (Emphasis Added)

**WAGNER**'s response on November 26, 2020 to the foregoing states in relevant part:

> "The [IDHR] case is still ongoing and I am waiting for a delayed position statement from Respondent, which is due on February 8, 2021. IDHR has no jurisdiction over evictions and does not get involved in those types of issues. I am not an attorney, so I cannot give you legal advice." (emphasis added)

56. The February 8, 2021 date referenced in **WAGNER**'s correspondence (see ¶ 55 herein), is four (4) days after the scheduled final court date in the debt-collections litigation initiated by **GIRARD** and **WESTWARD**, on behalf of the **BOARD**. As aforementioned, the investigation report did not arrive soon after February 8, 2021, but more than a year after the "delayed position statement from Respondent" and despite WAGNER's position that the IDHR has "no jurisdiction over evictions", to exclude the recent reported impact of violations on Vanessa,  her report *is* dedicated

to the debt-collections litigation in 2021, outside the scope of the complaint in 2020, with intent to justify the in-court FHA violations and the state actors who enabled it.

57. **WAGNER**'s crafted report is with intent to justify IDHR's disregard of the human rights and FHA violations to Vanessa and the Unit's tenants - from the illicit, coercive and threatening efforts, in the courtroom and in the backroom, to deprive Vanessa of her rights; the ensuing impact of the violations on Vanessa's ability to continue to rent and live in the same predominantly "white" neighborhood and the Unit's deprived tenants, of a protected class, subversively ousted from the Unit by the illicit actions of **WESTWARD** and the **BOARD** to forcibly take possession of the Unit, with **GIRARD** reaping the monetary spoils and the state actors covered to aid/abet more.

58. In compliance to the "Notice of Dismissal for Lack of Jurisdiction and Lack of Substantial Evidence for Cases Involving Real Estate Transactions", Vanessa timely signed the Request for Review, attached a three-page letter with two (2) exhibits, all sent by third-party courier to the address on the "Request for Review" form "100 West Randolph Street, Suite 5-100, Chicago, Illinois 60601", attention of **BENNETT**.

59. By August 30, 2022, Vanessa's Request for Review was filed by the COMMISSION.

60. Pursuant to Illinois Administrative Code Tit. 56 § 5300, Subpart D which deals with procedures for Request for Review, **IDHR**'s response to Vanessa's Request for Review was due thirty (30) days from the date of service of the filed Request for Service. The COMMISSION gave IDHR more than thirty (30) days, until October 13, 2022 to file their response to the Request for Review.

61. On October 13, 2022, when **IDHR**'s response was due, they filed an extension of time, stamped as received on that date and granted by the COMMISSION to give them until November 21, 2022 to respond.

62. On account of the long pendency of the IDHR case and Vanessa's concurrent efforts in another lawsuit with state actors violating other protected rights, Vanessa followed up with the COMMISSION, by submitting for filing a motion, alerting of the lack of receipt or service of a filed response by the IDHR on or by November 21, 2022, to allow for her due process right to file a reply pursuant to Ill. Admin. Code Tit. 56 § 5300; the lack of service of any orders by the COMMISSION on or after it granted IDHR's extension of time to file the response.. The motion was sent by third-party courier and received by the COMMISSION on January 17, 2023.

63. As of the date of this Complaint, the COMMISSION has chosen not to respond to or file and serve Vanessa's motion requesting a copy of any filed response by the **IDHR** to the Request for Review. The May 2022 dismissal by IDHR of Vanessa's October 2020 complaint, after it re-worded and crafted Counts it never shared with Vanessa, to allege lack of jurisdiction and insufficient evidence to dismiss, followed by the ongoing violations of the Ill. Admin. Code Tit. 56 § 5300 for the Request for Review, have all conspired to preclude any timely relief to Vanessa for violations of her protected rights and led to damages for which **WAGNER** and **BENNETT** are liable.

## 2) INVALID EVICTION ORDER – CIVIL RIGHT VIOLATIONS, FRAUD AND EXTORTION (Defendants JWRIGHT, STACEY, GIRARD, WESTWARD, BOARD)

64. After the FHA violations negatively impacted Vanessa's ability to lease real estate and IDHR's response that it has no jurisdiction (see § 55 herein), Vanessa reached out

to legal resources for assistance with the case referenced in the denied rental application, Case No. 2020 M1 700013.

65. None of the legal resources contacted, on review of the case and determination of how it was initiated (without serving a Demand for Possession) wanted to take it on or alleged unavailability pointing to others resources; one such attorney was BRIAN NELLIGAN. Based on the recommendation of a legal aid clinic, Vanessa filed a request to quash service pursuant to 735 ILCS 5/2-301(a).

66. The outcome of Case No. 2020 M1 700013 is well-documented, including the subsequent appeal in the First District Appellate Court of Illinois, under Case No. 1-21-0222. (for Vanessa's allegations of more civil rights violations, fraud and extortion in the First District Appellate Court of Illinois, see "Section B" at 22 herein)

67. In the state court, Defendant **JWRIGHT** chose not to give Vanessa any opportunity to respond to the **BOARD**'s complaint, which is signed by OUELLETTE of **WESTWARD** and filed by **GIRARD** in Case 2020 M1 700013; within nine (9) days of **JWRIGHT**'s refusal to quash service, parroting GIRARD's fabrications that Vanessa resided overseas so service was neither possible nor necessary, the trial started after Vanessa's request for continuation to retain counsel, is also denied.

68. **KWRIGHT** assigned **STACEY** to preside over the trial; at trial, Vanessa had no legal representation, no witnesses, no filed response to the **BOARD**'s complaint, as denied the opportunity to do so by actors in haste to execute a well-orchestrated script where there is typically an eviction order, regardless of facts, for extortion of legal fees.

69. In less than twenty-four (24) hours to the trial, **WESTWARD** sent Vanessa, for the first time, the Unit's account statement in which the $4,066.72 cashier's check

20

payment is omitted, along with two (2) other monthly assessment payments, with unauthorized charges of $4,130.38 in "legal fees" to aver and misrepresent to the state court that Vanessa owed $ $8,685.66 in "unpaid assessments" for the Unit.

70. With less than twenty-four (24) hours to trial start, Vanessa was left to file a pleading for sanctions attaching whatever proof of payments to **WESTWARD** she could find, including an image of the $4,066.72 cashier's check, the proof of delivery signed by R. CELLINI of **WESTWARD** and other assessments payments through her bank. Though her pleading is file-stamped by the electronic filing system for a hearing before the start of trial, JWRIGHT chose not to address her pleading until after trial.

71. At trial, **GIRARD** confirmed that **WESTWARD** received the $4,066.72 cashier's check payment, but he directed them not to credit the Unit's account in a bid to protect its claim to attorney's fees for the (tortious) debt-collections litigation he initiated.

72. At trial, Vanessa's two (2) most recent assessment payments – the month before trial and the month of trial – were not acknowledged as received by **WESTWARD** and missing in the Unit's account statement, despite WESTWARD's testimony that their usual business practice is to reflect all received payments in account ledgers within twenty-four (24) hours of receipt. The deviation from the alleged policy for the Unit was not explained and **STACEY** barred Vanessa's cross-examination on the same.

73. In recognition that accounting for all payments testified to by Vanessa and removing unauthorized legal fees zeroed out the $8,685.66 alleged as owed on the Unit, **STACEY** entered an invalid eviction order (with no assessments owed) to assure **GIRARD**'s claim to legal fees at a future court date, February 4, 2021, and to

allegedly give **WESTWARD** the opportunity to resolve and credit omitted payments in the Unit's account statement presented to the state court at trial.

74. On the final court date, **GIRARD** confirmed **WESTWARD**'s receipt of assessment payments the month prior to trial and the month of trial but asserted the $4,066.72 cashier check is "lost" thus the Unit's account remained uncredited of that payment.

75. **STACEY** entered an order crediting Vanessa for the confirmed $4,066.72 cashier's check payment, but to award some attorneys' fees to **GIRARD** chose to allocate the assessment payment the month of trial as payment for assessment due on March 2020, a year prior, ignoring all assessment payments made after March 2020 to the month of trial could have been reasonably applied to March 2020; the intent of **STACEY** was to fabricate a period of delinquency to extort attorneys' fees for **GIRARD**, come what may, in light of no assessments owed. The confirmed assessment payment the month of trial is declared *nunc pro tunc* to the date of the invalid eviction order, which STACEY refused to vacate despite Vanessa's filed request set for that court date.

76. For the confirmed cashier check payment of $4,066.72 that **GIRARD** chose to assert as "lost" to the state court, **STACEY** ordered Vanessa to send her bank's affidavit form to GIRARD so **WESTWARD**, on behalf of GREEVIEW, can get it re-issued.

77. On the same day of **STACEY**'s ruling, Vanessa sent an email with the blank affidavit form to **GIRARD** and STACEY, with herself copied on the correspondence and also filed the affidavit form in the state case so her due diligence is public information.

78. **JWRIGHT** then chose to rule on Vanessa's pre-trial pleading, after STACEY recognized the trial and use of judicial resources can be viewed as a bid for legal fees; JWRIGHT denied the request for sanctions and disparaged Vanessa's solo efforts at

trial, informed that she could have only done what she did as either an attorney without a license or with an attorney helping in the shadows, goaded her to appeal with a demonstrated confidence that the outcome was predetermined – his clout would assure no relief for his willful statutory abuses to Vanessa and her tenant's harm.

**B. TIMELINE – POST EVICTION ORDER (2021 – Ongoing)**

    3) **FRAUD, EXTORTION AND OBSTRUCTION PRACTICES (Defendants BOARD, WESTWARD, GIRARD, STACEY, JWRIGHT, PETERSEN, LUGO, DELORT, CONNORS, MARTIN, REYES**

79. After **STACEY**'s invalid eviction order, TENANT #2 subsisting for months without resolution to the water issue, left the Unit during the pandemic. Vanessa was left with a vacant, unrentable Unit; an invalid eviction order with no unpaid assessments from a case still publicly maligning her; a fraudulent order for legal fees to **GIRARD** – in a conspiracy with **WESTWARD** and **BOARD** – after subversively denying her the merits of her $4,066.72 cashier check payment in the throes of unemployment.

80. Vanessa sent correspondence to the OFFICE OF THE CHIEF JUDGE of the Circuit Court of Cook County, attention of Chief Judge **TIMOTHY C. EVANS** titled, "Request for Judicial Due Diligence for Case # 2020 M1 700013" giving notice of the civil rights and due process violations and the extortionary and fraudulent practices of its judges that left her at the verge of losing the Unit, after also suffering years of atrocities in another division of the same court, the Domestic Relations Division, all under his oversight. She concluded her correspondence with these words:

> "I no longer try to rationalize how the Cook County Court works, which though mandated like others to protect the "weak" appears to enjoy abusing them, and in my case, has robbed and dehumanized me and my children with resulting harm to all aspects of our lives. I earned over $100,000+ soon after I relocated to Illinois is 2014; now I am on state aid. Nevertheless, the

same "dead horse" is still being beaten, the same abuses piled on and covered up by criminalizing the "dead horse" and/or keeping it buried. In 2020, society took to the streets to protest the murder of a "black" man under the "knee" of an officer mandated to uphold the law including the Fourteenth Amendment of the United States Constitution. The conduct of Cook County Circuit Court through its judges in my experiences, is no different as the "knee" it uses "deprive any person of life, liberty, or property, without due process of law."

81. The OFFICE OF THE CHIEF JUDGE, with notification of the violations by judges in its jurisdiction, disregarded and eschewed its responsibilities to distort the reported issue as a quest for legal representation in a concluded case or a review of a court order; written by STEPHEN M. BRANDT, the response states in relevant part:

> "I am writing in response to your letter to Chief Judge Timothy C. Evans, which was referred to me for a response. As we indicated to you in previous correspondence, the administrative authority of the chief judge does not include the authority to review decisions made by other judges, direct other judges in their rulings, or intervene in cases assigned to other judges. *** [W]e suggest you consult with an attorney knowledgeable in these matters to help determine the options available to you."

82. No attorney contacted by Vanessa wanted a case with willful statutory abuses by judges with clout in a court with a public reputation of corruption crucifying (yet another) indigent individual; Vanessa's only path to relief was to appeal *pro se*. She filed an "Application for Waiver of Court Fees" in the state court disclosing her financial state; and as required by the Office of the Presiding Judge, she sent her application to **KWRIGHT** with supporting documentation including an Illinois Department of Employment Security's Unemployment statement.

83. **KWRIGHT**, with notice of the case, denied Vanessa's Application for Waiver of Court Fees effectively obstructing her ability to appeal orders of judges in his division.

84. As of February 25, 2021, **JWRIGHT** had not entered a written order for his oral ruling denying the request for sanctions; Vanessa had to file a motion to request

issuance of the same, granted on February 25, 2021. When JWRIGHT issued the order on March 2, 2021, through courtroom clerk, ANNETTE Z. PASTERNAK, the order was backdated to his oral ruling instead of the date of issuance of the written order.

85. On account of the backdated order of **JWRIGHT**, Vanessa had to file a Notice of Appeal on March 2, 2021 to be timely, accepted by the First District, Illinois Appellate Court on March 4, 2022 to create appeal case no. 1-22-0222.

86. For the record to be prepared and sent to the Illinois Appellate Court for review of the invalid eviction order and (extortionary) award for legal fees, Vanessa filed a request for preparation of the record, which requires an initial court fee of $70.00 to the Clerk of Court in the Cook County Circuit Court's Civil Appeals Division; at this time, **PETERSON** was the Deputy Clerk of Civil Appeals Division.

87. Vanessa's request for preparation of the record on appeal was rejected by a clerk under **PETERSON**'s oversight; in a series of back-and-forth correspondences including JANET M. HUNTER, Chief Deputy Clerk for the Civil Division, and **LUGO** no valid reason could be provided to Vanessa for the rejection and thus had to be reversed.

88. The next obstruction came with transmitting the record; according to Illinois Supreme Court Rule 608, the record must be filed with the Illinois Appellate Court within sixty-three (63) days from the date the notice of appeal is filed. On May 5, 2021, a clerk of the Illinois Appellate Court required that Vanessa request leave for the record to be filed into the appeal case as Civil Appeals Division delivered it late, in violation of the rule, and there is no automatic acceptance of a late record even upon request.

89. On May 11, 2021, the record, certified by the Clerk of Civil Appeals Divisions under **PETERSON** was filed into Case 1-21-0222 in the Illinois Appellate Court.

90. The filed record in the Illinois Appellate Court showed that several parts of the original record had been tampered with, altered or excluded. To name a few: (a) the proof-of-delivery by the third-party courier for the $4,066.72 cashier's check payment to **WESTWARD** had text contents skewered with lines canceling/obscuring the date-time of delivery and the tracking number; (b) the image of the $4,066.72 cashier's check payment content was partly obscured; the filed report of proceedings on February 25, 2021 when Vanessa requested **JWRIGHT** issue a written order (that he subsequently backdated) was excluded as was **STACEY**'s February 5, 2021 order; (c) Vanessa's motion for **JWRIGHT** to vacate or reconsider his pre-trial ruling misrepresenting she resided overseas that had a scheduled "hearing date", a defined "courtroom number" and "location" (by the electronic filing system) had all been deleted and all values arbitrarily replaced with "no hearing scheduled".

91. From May 14, 2021, Vanessa's efforts to get the excluded transcript released to the Illinois Appellate Court required correspondences with **LUGO** and **HUNTER**, an Emergency Motion to JWRIGHT delayed from address and continued several times.

92. Impeded in her bid to get one excluded transcript released to the Illinois Appellate Court, on May 24, 2021, Vanessa filed a motion to withdraw and refile the entire corrupt and incomplete record; ROBERT C. GORDON (who lost his bid for a renewed judicial term in 2022) denied on June 3, 2021 stating Vanessa "can file a supplemental record for all missing documents" in disregard his ruling conveniently kept the corrupted/altered portions of the record on appeal unaddressed.

93. By June 7, 2021, a week to the due date of her appellant brief, Vanessa is forced to request for an extension of time in light of a corrupt and incomplete record on appeal.

94. On June 22, 2021, when Vanessa timely filed her appellant brief, **PETERSON** had not addressed her requests to supplement the record on appeal, on June 9, 2021, June 12, 2021 and June 16, 2021. On June 21, 2021, PETERSEN informed that she is no longer in the Civil Appeals Division, directing Vanessa to **LUGO**, her replacement.

95. On August 9, 2021, two (2) months after unaddressed requests to supplement the record, with the briefing schedule long concluded, **LUGO** chose to respond to request more court fees before to release the supplemental record; Vanessa paid.

96. On August 13, 2021, over three (3) months after the record on appeal was due, the supplemental record is filed into a corrupt record on review.

97. With the outcome predetermined, **GIRARD** did not bother to file an appellee brief; the assigned justices – **CONNORS**, **DELORT** and JOY CUNNINGHAM (who lost her bid for a renewed judicial term in 2022) argued on behalf of GIRARD and judicial peers, **JWRIGHT** and **STACEY**, for Vanessa's request for sanctions.

98. On arrival at the Illinois Appellate Court, Vanessa filed a Motion to Stay Enforcement of the (invalid) Eviction Order and (extortionary) monetary judgment of fees to **GIRARD** and for an extension of time for the filing and approval of the bond or other form of security, given her indigent status. She concurrently filed an application for a waiver of court fees with supporting documents, that was ignored.

99. For the request for a stay, on March 19, 2021 **REYES**, **MATTHIAS** and presiding justice **DELORT**, conditioned granting stay to Vanessa paying GIRARD month for use and occupancy of the Unit toward an undefined and alleged "reasonable monetary amount". They further stated if she failed to pay by first of each month to GIRARD, she would be in default of its order and the stay lifted on **GIRARD**'s motion.

100. In the March 24, 2021 response to Vanessa's follow on request to clarify the "reasonable monetary amount" and if they were reforming the invalid eviction order and extortionary monetary judgment on appeal, **REYES**, **MATTHIAS** and **DELORT**, did not specify the "reasonable monetary amount"; Vanessa is ordered that in less than a month she would have to pay a surety bond of $4,000.00.

101. In response to Vanessa's request to vacate or reconsider their March 24, 2021 order, the same justices (**REYES**, **MATTHIAS** and **DELORT**) chose to vacate the conditional stay leaving Vanessa with an imminent payment of $4,000.00, with no rental/ employment income, whiles GIRARD harassed for yet another $4,066.72 payment instead of follow the state court order and use the bank affidavit form to get a re-issuance of the $4,066.72 cashier's check that he alleged was "lost".

102. On April 1, 2021, **GIRARD** contacted Vanessa to inform an unnamed bank "rejected the attempted deposit of the [$4,066.72] cashier's check" and requested Vanessa deliver a new check in the amount of $4,066.72 directly to GIRARD. Vanessa duly directed GIRARD to fill-out the blank affidavit form of the bank that issued the cashier's check and submit, as prior shared, and per **STACEY**'s order.

103. On April 1, 2022, **GIRARD** responded to Vanessa to assert "the check has been rejected by the bank as such cannot be reissued."

104. Vanessa contacted the bank that issued the $4,066.72 cashier's check; the bank confirmed that there had been no request to reissue the cashier's check, no attempt to cash it nor any rejection as a result nor did the cashier's check have an expiration date; as such an affidavit form submission allows for reissuance with a stated reason.

105. On informing **GIRARD** that the bank that issued the cashier's check did not affirm his assertions and to provide proof of the alleged rejection, GIRARD's response was "I am sorry, I do not understand your email." He then followed with threats calling on the actions of **REYES**, **MATTHIAS** and **DELORT** which "lifted the automatic bankruptcy stay" to threaten that "unless [Vanessa] cure[s] the delinquency on this account the association will have no alternative but to lodge the eviction order with the sheriff." In other words, GIRARD lodged the invalid eviction order with the sheriff to coerce for a duplicate payment of the $4,066.72 directed to himself.

106. Vanessa sent no more payments to **GIRARD** nor responded to anymore threats or requests. Her closing message to GIRARD stated in relevant part as follows:

> "I am sure a federal judge would be happy to know that not only did a licensed attorney of Illinois make misrepresentations on the record in [] state proceedings to proceed with a claim they never served to [a] defendant, but withheld the received payment to progress a claim for legal fees, alleged it "lost" when ordered by the state court to cash it, in order to get an invalid eviction order based on legal fees alone and then after allegedly cashing the cashier's check, send emails claiming it was "rejected" with no proof and I have to take [his] word for it to get another cashier's check for $4,066.72...
> You must either think me incredibly naïve/stupid or you have a heightened and false sense of invincibility.
> You have the $4,066.72 Mr. Girard. The games are over. I do not have anymore money to give to you or Greenview Gardens."

### 4) REAL ESTATE TRANSACTION LOSSES (Defendants GIRARD, WESTWARD, BOARD)

107. In June 2021, Vanessa listed the vacant Unit for sale, at the risk of bank foreclosure during the protracted investigation by the IDHR of the FHA violations and the protracted and obstructed appeal in the Illinois Appellate Court.

108. Vanessa found an interested buyer and hired a real estate attorney whose remittance was to come from the sale proceeds instead of an upfront payment from Vanessa.

109.   By August 2021, the interested buyer for the Unit bolted on finding a lien was placed on the Unit by **GIRARD** for legal fees; the home closing documents released by **WESTWARD** less than twenty-four (24) hours to the scheduled closing, informed GREEVIEW sought over $8,0000 as the alleged unpaid assessments – the same amount brought in the tortious lawsuit in case 2020 M1 70013 that the state court found was not owed to award $3,054.18 in legal fees. If not via the state courts, threatening emails and false reporting, **GIRARD**, **WESTWARD** and the **BOARD** were determined to extort more from Vanessa through any induced loss of the Unit.

110.   After the attempted Unit sale fell through, **WESTWARD** continued to keep the Unit's account statement at a standing balance of over $8,000 each month, as the monthly assessments continued to be timely paid on the Unit.

111.   On January 23, 2023, Vanessa contacted **STASZCZAK**, as the Executive Vice President for Property Management for WESTWARD, to address the multi-year accounting falsities to reflect all received payments by WESTWARD in the Unit's account statement to promptly correct the same to avoid further legal action. As of this Complaint filing, **STASZCZAK** has chosen not to respond.

112.   On account of real estate losses of the Unit via fraudulent and extortionary practices involving officers in the state courts, with a state supreme court that declined a discretionary appeal or a supervisory order in lieu, this Complaint is timely filed here as there is no adequate remedy at a law and all state avenues have been exhausted.

## V.    CLAIMS FOR RELIEF

113.   Vanessa, as a protected individual under the FHA, who was engaged or attempted to engage in the exercise of her fair housing rights, has been subjected to coercion,

threats, intimidation and obstructions by Defendants motivated by an intent to discriminate and suffered injuries that is causally connected to the (mis)conducts of all Defendants, some of which is ongoing and can be redressed by declaratory relief, injunctive relief and an award for damages and costs.

A. <u>COUNT I</u>: **DECLARATORY RELIEF THAT DEFENDANTS VIOLATED AND CONTINUE TO VIOLATE THE FAIR HOUSING ACT AND LIABLE PURSUANT TO 42 U.S.C. § 3613 AND 42 U.S.C. § 1985**

114. Vanessa incorporates the foregoing paragraphs one (1) through to one hundred and thirteen (113) as if fully set forth verbatim herein.

115. Declaratory relief is authorized under 28 U.S.C. §§ 2201-2202.

116. The Fair Housing Act ("FHA") was enacted by Congress to eradicate discriminatory housing policies and practices to afford members of protected classes fair housing opportunity throughout the United States. See 42 U.S.C. § 3601. The practices occur in the backroom and in the courtroom aided/abetted by several actors.

117. In recognition of the pervasive and insidious problem of housing administration, the Supreme Court found the "language of the Act is broad and inclusive" and Congress's priority can only be carried out "by a generous construction." *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 212 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) "By drafting the FHA in the passive voice, Congress "bann[ed] an outcome while not saying who the actor is." *N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 298 (7th Cir. 1992) with no restrictions of who is liable under the FHA.

118. The actors, under this Count, are all Defendants whose collective actions led to the FHA violations and denied Vanessa of equal privileges under the law, in the meaning of 42 U.S.C. § 1985 and 42 U.S.C. § 3617 including but not limited to the

creation/placement of barriers to housing/maintaining tenants of a protected class in the Unit using insidious, subjective practices, undocumented and ad hoc policies, in violation of 42 U.S.C. § 3604(a) to "make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."

119.   Defendant, **BOARD** and its agents - **WESTWARD** and **GIRARD** who cohabitate and aid/abet each other's interest for property and monetary gain respectively - knew the Demand for Possession was not served but also fraudulently asserted, with a fabricated abandonment of the tenant-occupied Unit and a fabricated default on "special" assessments never noticed prior to charges with account statements not mailed until *after* the tortious debt-collection litigation allowed for an invalid eviction order for forcible possession of the Unit and concurrent monetary gain for **GIRARD**.

120.   Defendants **STACEY** and **JWRIGHT** had knowledge that Vanessa was not resident in an overseas address nor in the Unit, knew the procedural rules of service and due diligent effort were violated by **GIRARD** and that their eviction order was tantamount to evicting any tenant lawfully occupying the Unit during the federal moratorium on evictions. To assure monetary gains to GIRARD, they violated the FHA to enter an invalid eviction order, with no assessments owed, which covered up the extortion of Vanessa and the orchestrated harm including to tenants in the Unit.

121.   Defendants **KWRIGHT** and the OFFICE OF THE CHIEF JUDGE had notice of the FHA and civil rights violations by state court judges in the Municipal Division and under their direct supervision, and failed to take action and are thereby complicit to the FHA violations aided/abetted by **STACEY** and **JWRIGHT** in the courtroom.

122. Defendants **PETERSEN** and **LUGO**, with a mandate to ensure a correct record for review is provided to the Appellate Court with no tampering to alter the same, failed to address the record alterations and tampering brought to their attention and certified the record for review, which aided/abetted the rigged and predetermined outcome of Vanessa's appeal to address the statutory violations including of the FHA.

123. Defendants **DELORT**, **CONNORS**, **MARTIN JR.,** and **REYES**, siting justices with a mandate to enforce the law, on review, aided/abetted the coverup of the statutory violations and extortionary practices by peers in the state court rather than immediately vacate both the invalid eviction order with no assessments owed and extortionary monetary award of legal fees for GIRARD to curtail the FHA violations.

124. Defendants **DELORT, MARTIN JR.,** and **REYES** reformed the invalid eviction order, not to protect Vanessa's rights or that of any lawful tenants in the Unit pursuant to the FHA, but to preserve an extortionary monetary award to GIRARD, who is assured of an unbound period of remittances toward an undefined amount alleged as "reasonable" (see ¶¶ 99, 100) for extortion in perpetuity, under the color of the law.

125. For Vanessa's refusal to consent to the extortionary setup, Defendants **DELORT**, **MARTIN JR.,** and **REYES** penalized her, by vacating a stay on a bond she could not pay to coerce remittances to **GIRARD** , even if (by inference) she would have to steal to preserve a *status quo* of extortionary practices and deprivations endorsed from the state circuit court to the state appellate court via route violations of the FHA and other applicable statutes to ensure due process of law and prevent unlawful outcomes.

126. Defendants **WAGNER** and **BENNETT**, with notice of the FHA violations aided/abetted the same by unilaterally extending the timeline of investigations, to over

two (2) years, allowing more harm, pain and suffering to Vanessa and any tenants in the Unit in the interim, then concluded with taking no action alleging lack of subject matter jurisdiction and lack of insufficient evidence (i.e. obstructed evidence) that covers up their willful inactions that aid/abet the FHA and Human Rights violations by several perpetrators with clout in the courtroom and in the backroom.

127.   All Defendants partake in the pervasive and insidious problem of housing administration in Cook County, Illinois with unaddressed violations occurring in and outside courtrooms via norms, discriminatory (un)written policies and practices that allowed Vanessa and the Unit's tenants to be targeted, on the basis of sex/gender, race national/ethnic origin, handicap (as protected under 42 U.S.C. § 3604(a)) and unfettered greed, under the color of law. Declaratory relief, under 28 U.S.C. §§ 2201-2202, is proper and necessary to curtail the ongoing commission of the violations.

   **B.  <u>COUNT II</u>: DECLARATORY RELIEF THAT DEFENDANTS VIOLATED AND CONTINUE TO VIOLATE THE ILLINOIS HUMAN RIGHTS ACT, TITLE VII OF THE CIVIL RIGHTS ACT AND 42 U.S.C. § 1982**

128.   Vanessa incorporates the foregoing paragraphs one (1) through to one hundred and twenty-seven (127) as if fully set forth verbatim herein.

129.   The Illinois Human Rights Act ("IHRA") "is intended to secure for all individuals in Illinois freedom from unlawful discrimination in connection with employment, **real estate transactions**, access to financial credit, and availability of public accommodations." *Blount v. Stroud*, 904 N.E. 2d 1,6 (Ill.2009) "To accomplish its objectives," the IHRA "created" the Illinois Department of Human Rights ("IDHR") and the Illinois Human Rights Commission ("IHRC"). *Id.* at 7

130. Section 1982 provides that "[a]ll citizens of the United States shall have the same right…to purchase, lease, sell, hold and convey real…property." 42 U.S.C. § 1982.

131. **WESTWARD** and the **BOARD** violated and continue to violate the IHRA through acts that "alter the terms, conditions or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith" (735 ILCS 5/3-102(B)) relative to the Unit with subjective, unwritten terms, conditions and requirements as a means to discriminate at will and obstruct furnishing services, here to Vanessa, tenants in the Unit and third-party service providers that Vanessa hired for the Unit.

132. **WESTWARD** and the **BOARD**'s (in)actions deprived Vanessa of her equal privileges under the law pursuant to her rights under 42 U.S.C. § 1982 via the obstructed sale of the Unit, obstructed maintenance of the Unit and obstructed leasing/retention of tenants, to cause several losses for which they are properly sued.

133. **WAGNER**'s investigation, endorsed by **BENNETT**, excluded identified perpetrators, at the relevant time of the complaint, such as **BAKER** alleging she is "black". WAGNER's discriminatory bias on account of race, is violation of the IHRA, which does not endorse using the race of an alleged violator to absolve them or to arbitrarily render them incapable of discriminatory actions against protected classes or render them immune from charges of discrimination. WAGNER willfully overlooked race is not the only factor referenced by Vanessa for misconducts against her and tenants in the Unit, to justify her report that sweeps the FHA violations under the rug with a dismissal given Vanessa's case implicates state judicial officers.

134. **STACY** and **JWRIGHT** aided/abetted **GIRARD**, **BOARD** and **WESTWARD** with an invalid eviction order to coerce ouster of lawful tenants in the Unit in violation of the IHRA and caused deprivations of Vanessa under 42 U.S.C. § 1982.

135. **KWRIGHT** and OFFICE OF THE CHIEF JUDGE with supervisory responsibility, had notice/knowledge of the IHRA violations, before and after Vanessa's advent to the Municipal Division of the Cook County Circuit Court, and failed to act allowing for or complicit to the violations to Vanessa's harm that of others

136. This Count seeks prospective declaratory relief, authorized by 28 U.S.C. §§ 2201-2202, that Defendants violated and continue to violate the Illinois Human Rights Acts and 42. U.S.C. § 1982.

**C.** <u>**COUNT III**</u>**: DECLARATORY RELIEF THAT DEFENDANTS VIOLATED AND CONTINUE TO VIOLATE THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE AND ARE LIABLE UNDER 42 U.S.C. 1983**

137. Vanessa incorporates paragraphs one (1) through to one hundred and thirty-six (136) as if fully set forth verbatim herein.

138. Vanessa's Fourteenth Amendment rights were violated by:

   a. Defendants **STACEY** and **JWRIGHT** in willful disregard of the Code of Civil Procedure and proper service of process in Case 2020 M1 700013 and the foregoing alleged actions to obstruct Vanessa's due process right to appeal.

   b. Defendants **PETERSON** and **LUGO** in the handling and certification of a corrupted record undermined a due process review in the state appellate court.

   c. Defendants **DELORT**, **CONNORS**, **MARTIN JR.,** and **REYES** in their lack of statutory compliance and misuse of a Rule 23 Order to impede an appeal of

their precedential ruling that the material fact for possession of someone's real property is not owed assessments, but an attorney's quest for (more) legal fees.

d. Defendants **WAGNER** and **BENNETT**, in their failure to comply with Article 7B of the Department of Human Rights Procedures and Article 8B Procedures and Relief for Real Estate Transactions deprived Vanessa of her due process right to reply to any filed response to her Request for Review; impeded her right to decide to have claims (that were never shared until already dismissed) proceed into a civil action, under the IDHR, for relief for the FHA violations.

e. Defendant **GIRARD** in willful disregard of the rules of service of process with false statements to a tribunal of law aided/abetted the obstruction of Vanessa's due process right to respond to any charges against her and to make any counter-claims for relief to the FHA violations in the state civil proceedings.

f. Defendants **WESTWARD** and the **BOARD**, working in concert with GIRARD, made false representations, orally and in (filed) documents to abrogate Vanessa's due process rights in the debt-collections litigation.

139. This Count seeks prospective declaratory relief, authorized by 28 U.S.C. §§ 2201-2202, that Defendants violated and continue to violate the Fourteenth Amendment Due Process Clause under color of statutes, ordinances, regulations, customs, in the backroom and courtroom, which subjected Vanessa to deprivation of her rights and privileges secured by the same.

**D. <u>COUNT IV</u>: DECLARATORY RELIEF THAT GIRARD AND WESTWARD360 VIOLATED AND CONTINUE TO VIOLATE THE FAIR DEBT COLLECTION PRACTICES ACT AND ARE LIABLE FOR**

**STATUTORY DAMAGES, COSTS AND FEES IN ACCORDANCE WITH
15 U.S.C. § 1692k(a)**

140.　Vanessa incorporates the foregoing paragraphs one (1) through to one hundred and thirty-nine (139) as if fully set forth verbatim herein.

141.　"The Fair Debt Collection Practices Act prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices. The Act says, for example, that a 'debt collector' may not use violence, obscenity, or repeated annoying phone calls, 15 U.S.C. § 1692d; may not falsely represent 'the character, amount, or legal status of any debt,' § 1692e(2)(A); and may not use various 'unfair or unconscionable means to collect or attempt to collect' a consumer debt, § 1692f. Among other things, the Act sets out rules that a debt collector must follow for 'acquiring location information' about the debtor, § 1692b; communicating about the debtor (and the debt) with third parties, § 1692c(b); and bringing '[l]egal actions," § 1692i. The Act imposes upon 'debt collectors' who violate its provisions (specifically described) "[c]ivil liability" to those whom they, e.g. harass, mislead or treat unfairly. §1692k." *Heintz v. Jenkins*, 514 U.S. 291 115 S.Ct. 1489

142.　**GIRARD**, as a person "who regularly collects or attempts to collect, directly or indirectly, [alleged] debts owed [to]…another" § 1692(a) violated the Fair Debt Collection Practices Acts prior to the debt-collection litigation, during the debt-litigation and *after* it concluded. As a lawyer, he chose to work with the discriminatory animus and misrepresentations of the **BOARD** and **WESTWARD** instead of the rules - on "acquiring location information" of the alleged debtor and representation of the

amount of any debt" § 1692e(2)(A) to the state court and to third-parties in real estate closing transactions – to mislead and treat Vanessa unfairly and for further losses.

143. **WESTWARD**, who requested payments without account statements after causing tortious debt-collection litigation to be initiated without notice, acted indirectly as a "debt collector". WESTWARD violated the Fair Debt Collection Practices Acts by excluding received payments from Unit's account statements to progress the tortious lawsuit; misled on Vanessa's location and the amount due on the Unit's account to the state court and third parties (during the attempted sale of the Unit). WESTWARD continued to harass for more illicit payments with statements stating more than $8,000.00 is still owed even after the legal action they helped initiate ruled otherwise.

144. **STASZCZAK**, with notice and supervisory authority in **WESTWARD**, is (in)directly participating in the ongoing violations of the Fair Debts Collections Act, after the end of the debt-collection litigation started by **GIRARD** on their solicitation.

145. There has been *no showing* "by a preponderance of evidence that the [ongoing] violation [i]s not intentional and resulted from a bona fide error..." § 1692k(c) by Defendants in the backroom, before any litigation and after the litigation concluded.

146. This Count seeks declaratory relief, authorized by 28 U.S.C. §§ 2201-2202, that **GIRARD** (under its own authority) and **WESTWARD** (under the authority of **STASZCZAK**) violated and continue to violate the Fair Debt Collections Act and are liable for statutory damages, costs and fees pursuant to 15 U.S.C. § 1692k(a).

E. <u>COUNT V</u>: **DECLARATORY RELIEF THE BOARD OF GREENVIEW GARDENS CONDOMINIUM ASSOCIATION BREACHED THE CONDOMINIUM BYLAWS TO CAUSE DEPRIVATIONS, PURSUANT TO 42 U.S.C. § 1981, AND ARE LIABLE FOR DAMAGES, COSTS AND FEES.**

147. Vanessa incorporates the foregoing paragraphs one (1) through to one hundred and forty-six (146) as if fully set forth verbatim herein.

148. The bylaws of a condominium and its declaration of covenants, restrictions, easements, and lien are contracts between unit owners and the condominium and thus are governed by the principles of contract interpretation and implicate Vanessa's equal rights under the law, pursuant to 42 U.S.C. § 1981.

149. As part of its fiduciary responsibilities, the **BOARD** is required to comply with procedures in the by-laws as well as the structures of the Illinois Condominium Property Act and not initiate or aid/abet discriminatory acts against unit owners.

150. The operative version of GREENVIEW's bylaws provided by **WESTWARD** at the time of the debt-collections litigation, states in relevant part that:

> "An assessment payment is delinquent and considered late if it is not received for payment on or after the fifteenth (15th) day of each month…Unit Owners with accounts that are more than thirty (30) days past due will be provided with *a notice from the Management Company* informing them that their assessments are past due. Once said notice is issued, the Unit Owner receiving the notice will have an additional fifteen (15) days to bring their assessment current, otherwise their account will be placed with the Association's attorney for collection." (emphasis added)

> All payments must be made in the form of a check or money order."

151. Despite the fact **WESTWARD** (the "Management Company") violated the bylaws by not giving notice of other charges, outside of the monthly assessments, before charging to the account (i.e., fabricated defaults to cause collections/revenue stream for GIRARD), their failure to comply falls under the fiduciary responsibilities of the **BOARD** that hired them to take action to avoid more fails and more harm to unit owners in GREENVIEW.

152.   The **BOARD** has failed, to-date, to act and continues to willfully disregard and abet the breaches by **WESTWARD** and is liable for the harm of their actions.

153.   At the conclusion of the tortious debt-collection litigation, no assessments was found as owed on the Unit and yet **GIRARD** pursued and harassed Vanessa to collect already adjudged and confirmed payments by the state court, allegedly on behalf of the **BOARD**, that also signed off on the fabricated assessments due in real estate closing documents that caused that real estate transaction to fail.

154.   In a breach of its fiduciary responsibilities, the **BOARD** has used and continues to use its agents to deprive of: (a) the privileges of homeownership in GREENVIEW to selectively ouster certain members; and (b) the benefits of payments to a unit's account to allow for the extortion of certain members.

155.   As of this instant Complaint, the Unit's account statement for the Unit, maintained by **WESTWARD** is still missing adjudged and confirmed payments, in the continuing fabrication of a default on monthly assessments for the Unit, which does not exist nor ever existed, to coerce and threaten for duplicate remittances – extortion - in criminal violation of the law.

156.   Vanessa is subjected to more pain and suffering *after* the conclusion of the tortious debt-collection litigation, approved by the **BOARD**, as a result of the BOARD's ongoing fiduciary breaches and the unlawful acts of agents it has hired to aid/abet its discriminatory and harmful impulses/directives in the backroom and in the courtroom.

157.   This Count seeks declaratory relief, authorized by 28 U.S.C. §§ 2201-2202, that the **BOARD** breached GREENVIEW bylaws and its fiduciary responsibilities to

cause deprivations of Vanessa that makes it liable for damages and costs for the pain, suffering and harm its (in)actions caused and for costs and fees of the lawsuit.

**F. COUNT VI: INJUNCTIVE RELIEF TO ENJOIN THE VIOLATIONS OF THE FAIR HOUSING ACT, FAIR DEBT COLLECTION PRACTICES ACT, ILLINOIS HUMAN RIGHTS ACT, TITLE II OF THE CIVIL RIGHTS ACT, AND THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE OF THE US CONSTITUTION**

158.  Vanessa incorporates the foregoing paragraphs one (1) through to one hundred and fifty-seven (157) as if fully set forth verbatim herein.

159.  All Defendants sued in this count are sued for acts in concert pursuant to norms, practices, (un)written policies that enable discrimination and repeat violations of statutes and constitutionally protected rights, in the backroom and in the courtroom.

160.  This Count seeks emergency temporary, preliminary injunctive relief pursuant to Fed. R. Civ. P. 65 and permanent injunctive relief pursuant to 42 U.S.C. § 1983 for the acts of Defendants that caused, failed to prevent or aided/abetted violations of the Due Process Clause of the Fourteenth Amendment, Fair Housing Act, Fair Debt Collection Practices Act and Illinois Human Rights Act.

161.  Pursuant to Fed. R. Civ. P. 65, Vanessa states:

a.  As a result of ongoing violations of the Fair Housing Act, Fair Debt Collection Practices Act, Illinois Human Rights Act and the Due Process Clause of the US Constitutions, she is being irreparably injured and will suffer irreparable loss in the interim; and

b.  Vanessa is likely to prevail on the merits of this claim; and

c.  There is no adequate remedy at law.

162.  As relief under this Count, Vanessa seeks the following emergency temporary, preliminary and permanent injunctive relief:

a.  An emergency temporary, preliminary and permanent injunction against all Defendants, their employees/contractors, successors, agents, attorneys and assigns from continuing violation of the Fair Housing Act, Illinois Human Rights Act and Due Process Clause to retaliate and to deprive Vanessa of equal rights, as a human of a protected class, a US citizen and real property owner.

b.  An emergency temporary, preliminary and permanent injunction against **STACEY** and **JWRIGHT** to suspend ongoing enforcement of the invalid eviction order and corollary monetary award of legal fees for **GIRARD**.

c.  An emergency temporary, preliminary and permanent injunction against the **BOARD,** its employees/contractors, successors, agents, attorneys and assigns from continuing breach of the condominium bylaws with discriminatory practices to oust lawful tenants of a protected class in units and targeted unit owners.

d.  A preliminary and permanent injunction against **GIRARD**, **WESTWARD**, **STASZCZAK,** their employees/contractors, successors, agents, attorneys and assigns from continuing violation of the Fair Debt Collections Act with abusive practices, false and misleading representation of "debt" for the Unit.

**G.  <u>COUNT VII</u>: COMPENSATORY RELIEF FOR THE VIOLATIONS OF THE FAIR HOUSING ACT, FAIR DEBT COLLECTION PRACTICES ACT, ILLINOIS HUMAN RIGHTS ACT AND THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE OF THE US CONSTITUTION**

163.  Vanessa incorporates the foregoing paragraphs one (1) through to one hundred and sixty-two (162) as if fully set forth verbatim herein.

164.  As of the filing of this Complaint, the "actual damages" related to the Unit stands at circa $185,450.00. This amount does not include:

    a.  Economic damages for the housing challenges Vanessa experienced immediately after the denied rental application due to the public debt-collections litigation and invalid eviction order. (*see* ¶ 64 herein)

    b.  Punitive damages for reputational harm caused by the public and statutorily void rulings of the state circuit court and the state appellate court.

    c.  Punitive damages for the pain and suffering caused by the collective violations of Defendants, in the courtroom and in the backroom, including harassments for already received payments, verbal abuse in the state court, to name a few.

165.  Vanessa seeks total punitive damages of not less than five (5) times of the actual damages she sustains, as of trial.

166.  Vanessa's costs in this lawsuit are not fully determined but would reasonably include the docketing fee of $402.00; service of process costs for each Defendant, other court fees and trial attorneys' fees and costs, all of which is not expected to be nominal, whiles the actual damages on the Unit grows.

167.  Defendant **GIRARD** is liable for actual and punitive damages, costs and fees pursuant to 42 U.S.C. § 3613, 42 U.S.C. § 1983, 15 U.S.C. § 1692k(a) and 42 U.S.C. § 1988.  He should be allocated 10% of the total compensatory damages due.

168.  Defendants **WESTWARD** and **STASZCZAK** is liable for actual and punitive damages, costs and fees pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1986 and 42 U.S.C.

§ 1988, where STASZCZAK knew or reasonably should have known of the wrongs acts committed by employees/contractors of WESTWARD, in concert with GIRARD, and failed to prevent or take action including his recent failure to respond when triggered to act to avoid legal action. WESTWARD should be allocated 50% of the total compensatory damages and 50% of the total costs due to Vanessa.

169. Defendant, the **BOARD** in its breach of its fiduciary responsibilities and the bylaws is liable for damages and costs, pursuant to 42 U.S.C. § 1986 and 42 U.S.C. § 1988 from its neglect to prevent deprivations by its agents, in its official capacity; with each member liable, in their individual capacity, for acting on personal animus toward a person of a protected class. The **BOARD** of GREENVIEW should be allocated 10% of total compensatory damages and 5% of the total costs due to Vanessa.

170. Defendants **JWRIGHT**, **KWRIGHT**, **STACEY**, **DELORT**, **CONNORS**, **MARTIN** and **REYES**, as judicial officers in Cook County of Illinois, are liable for costs pursuant to 42 U.S.C. § 1986 and 42 U.S.C. § 1988, in their official capacity and liable for punitive damages, in their individual capacity. They knew of the wrongs done or conspired to be done in the deprivation of rights and with power to prevent or aid in preventing the same, willfully neglected/refused to do so and rather abetted the extortion and further harm, to act in the clear absence of jurisdiction. This federal action is necessitated by their refusal/neglect to uphold the applicable laws, despite notice, and lack of respect for Vanessa's constitutional and human rights. They should be allocated 75% of the total costs, in their official capacity, and 5% each of the total compensatory damages due to Vanessa, in their individual capacity.

171.   Defendants **PETERSEN** and **LUGO** are liable for costs and fees pursuant to 42 U.S.C. § 1986 and 42 U.S.C. § 1988 and for punitive damages for actions that subverted and delayed the appeal with a corrupted record on appeal, to Vanessa's harm. They should be allocated 5% of the total costs due to Vanessa.

172.   Defendants **WAGNER** and **BENNETT** are liable for actual and punitive damages, costs and fees pursuant to 42 U.S.C. § 3613, 42 U.S.C. § 1986 and 42 U.S.C. § 1988 as both knew of the discriminatory practices and deprivations of Vanessa, in- and outside the courtroom, notwithstanding of tenants in the Unit, and chose to act in concert with alleged violators to obstruct remedy with the IHRA or via a civil action. For their ongoing refusal to fulfill their essential function and responsibility, under the IHRA, to protect human rights, and their discriminatory bias based on the clout of the alleged violators, they should be allocated 25% of the total compensatory damages and 15% of the total costs due to Vanessa.

## VI.    PRAYER FOR RELIEF

WHEREFORE, VANESSA WEREKO respectfully request that this Court enter the following judgments and awards on her behalf:

(a)  Declaratory Judgment in her favor for Counts 1, II, III, IV and V.

(b)  Emergency Temporary, Preliminary and Permanent Injunction under Count VI.

(c)  Compensatory Relief for costs and damages - economic and non-economic - including pain and suffering, in her favor for Count VII.

(d)  Such other relief as this Court deems just and equitable.

## VII.    DEMAND FOR JURY TRIAL

WHEREFORE, VANESSA WEREKO respectfully requests of this Court:

(e) A jury trial to determine the punitive damages under Count VII.

Dated: 31st day of January, 2023          RESPECTFULLY SUBMITED:

                                          _____
                                          VANESSA WEREKO
                                          675 Lakeview Pkwy #5035
                                          Vernon Hills, IL 60061
                                          Main No.: 847-637-7142
                                          Email: werekovb@me.com

## **VERIFICATION**

I, VANESSA WEREKO, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.
2. I have personal knowledge of the facts and allegations, including those set out in the foregoing Verified Complaint for Declaratory, Injunctive and Compensatory Relief, and if called on to testify I would competently testify to the matters stated herein.
3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning the entire subject matter are true and correct.  28 U.S.C. § 1746.

Executed on the 31st day of January, 2023.

                                          _/s/ Vanessa Wereko_____
                                          **VANESSA WEREKO**
                                          675 Lakeview Pkwy #5035
                                          Vernon Hills, IL 60061
                                          Main No.: 847-637-7142
                                          Email: werekovb@me.com