# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VANESTA WEREKO, <br><br> Plaintiff, <br><br> v. <br><br> WESTWARD360, et al., <br><br> Defendants. | Case No. 23 C 651 <br><br> Hon. LaShonda A. Hunt |

## ORDER

*Pro se* Plaintiff Vanessa Wereko brought this action against a condominium association, its board members and its lawyer, a property management company and its employee, various Illinois state court trial judges and appellate court justices, employees of the Circuit Court of Cook County, and employees of the Illinois Department of Human Rights. She asserts violations of 42 U.S.C. §§ 1982, 1983, and 1985; Title VII of the Civil Rights Act; the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"); and the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* ("IHRA"). Multiple defendants have moved to dismiss the case for lack of jurisdiction and for failure to state a claim. (*See* Dkt. Nos. 60, 62, 63, 65, 102). Plaintiff has also moved for entry of default against certain defendants who did not respond to her complaint. (*See* Dkt. No. 58). Upon review of the pleadings, for the reasons discussed below, the complaint is dismissed because the *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction.

## STATEMENT

The facts are taken from Plaintiff's complaint. This dispute arises from Plaintiff's ownership of a condominium located at 7639 N. Greenview Ave., 1E, Chicago, Illinois, 60602 (the "Unit"). The condominium building was governed by Defendant Board of Greenview Gardens Condominium Association (the "Association"). Defendants Cedtrice R. Baker, Derek Smith, and Lilian Ann Khatter were board members, serving as President, Treasurer, and Secretary, respectively, of the Association. Defendant Westward360 ("Westward") was the property management company hired by the Association to furnish facilities and services to the building. Defendant Eric Staszczak was the Executive Vice President of Westward.

Plaintiff alleges that in September 2019, she rented the Unit to a tenant. From October 2019 to January 2020, the tenant was unable to access the storage space associated with the Unit due to a lock on the door. Plaintiff asked Westward to remove the lock, but they refused to do so. Plaintiff claims the tenant refused to pay rent and exited the lease because she did not have access to the storage space. Eventually, Plaintiff hired her own locksmith to remove the lock from her assigned storage space.

In January 2020, the Association filed a complaint against Plaintiff for possession of the Unit and collection of unpaid assessments in the Circuit Court of Cook County, First Municipal District.[1] *See Greenview Gardens*, 2022 IL App (1st) 210222-U, at ¶ 4. The Association was represented by Defendant Andrew Girard. The collection lawsuit was initially assigned to Defendant Judge James R. Wright, who entered orders granting the Association leave to serve Plaintiff by posting of notice and denying Plaintiff's subsequent motion to quash service. *Id.* at ¶ 8-14.

Defendant Judge Christ Stacey presided over the trial of the case. Plaintiff complains that Judge Stacey denied her the opportunity to obtain legal representation, present witnesses, and file a response to the Association's complaint. On January 22, 2021, Judge Stacey entered an eviction order against Plaintiff. *Id.* at ¶ 31. On February 4, 2021, after a prove-up hearing, Judge Stacey entered a money judgment against Plaintiff. *Id.* at ¶ 34-35. The same day, Judge J. Wright denied the motion for sanctions Plaintiff had filed against the Association. *Id.* at 37-39. On February 10, 2021, Defendant Judge E. Kenneth Wright, Jr., Presiding Judge for the First Municipal District, denied Plaintiff's application for waiver of court fees.

Thereafter, Plaintiff appealed the trial court judgment. Plaintiff claims that, as the Assistant Deputy Clerk of the Civil Appeals Division, Defendant Gretchen L. Peterson oversaw preparation of the lower court record for appeal, which Plaintiff alleges was corrupt and incomplete. In June 2021, Plaintiff was informed that Defendant Richard Lugo replaced Peterson, and Plaintiff began communicating with Lugo regarding issues with the record.

On March 19, 2021, the appellate court stayed enforcement of the eviction order, conditioned on Plaintiff's payment for use and occupancy of the Unit during the appeal. The order was signed by Defendants Justice Mathias Delort, as Presiding Judge, Justice Jesse Reyes, and Justice Leroy Martin, Jr. On January 22, 2022, in an opinion delivered by Defendant Justice Maureen Conners, the appellate court affirmed the judgment of the trial court. *Id*. at ¶ 91.

While the collection proceeding was pending before the trial court, another tenant moved into the Unit. In June 2020, Plaintiff contacted Westward about water issues in the Unit. Plaintiff was instructed to contact a third-party service provider for assistance. However, Plaintiff alleges that from June 2020 to October 2020, Westward, operating at the direction of the Association, refused to shut off the water in the building so that the issue could be resolved.

Based on this incident, Plaintiff filed a complaint with the Illinois Human Rights Commission alleging that there were ongoing human rights violations, which impacted the safety and well-being of the tenant. The complaint was sent to the Illinois Department of Human Rights ("IDHR"), and Defendant Angela Wagner was assigned to investigate. At the time of the investigation, Defendant James L. Bennett was the director of the IDHR. In May 2022, Plaintiff's IDHR complaint was dismissed for lack of jurisdiction and lack of substantial evidence. Thereafter, Plaintiff requested that the Illinois Human Rights Commission ("IHRC") review the IDHR's

---

[1] Plaintiff repeatedly references the state court proceedings in her complaint. The Court therefore takes judicial notice of the dockets of the relevant actions. *See Guar. Bank v. Chubb Corp.*, 538 F.3d 587, 591 (7th Cir. 2008) ("[A] court is of course entitled to take judicial notice of judicial proceedings.").

decision. At the time this lawsuit was filed, the IHRC had not yet ruled on Plaintiff's request for review.

In June 2021, Plaintiff attempted to sell the Unit, but she claims the sale fell through after the potential buyer learned of a lien that had been asserted against the property related to the unpaid assessments.

Defendants Baker, Girard, Petersen, Judges J. Wright, K. Wright, and Stacey, and Justices Delort, Connors, Martin, and Reyes filed motions to dismiss [60] [62] [63] pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the *Rooker-Feldman* doctrine bars Plaintiff's claims. Defendants Bennett and Wagner filed a motion to dismiss [65] pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the complaint failed to state a claim. Defendant Baker initially filed an answer [57] to the complaint, but later filed a motion to dismiss [102], citing Rules 12(b)(1) and 12(b)(6) as grounds for relief. Defendants Westward, Staszczak, the Association, Khatter, and Lugo did not respond to Plaintiff's complaint; thus, Plaintiff moved for entry of default [58] against them under Federal Rule of Civil Procedure 55(a).

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction, it must proceed no further. *State of Ill. v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998). Furthermore, subject-matter jurisdiction must be secure at all times, regardless of whether the parties raise the issue, and no matter how much has been invested in a case. *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 853 (7th Cir. 2012). When considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Alicea-Hernandez v. Cath. Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003).

Under the *Rooker-Feldman* doctrine, it is well-established that federal district courts do not have subject matter jurisdiction to review state court decisions. *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). Even where a plaintiff does not directly seek to set aside a state court judgment, the *Rooker-Feldman* doctrine bars claims that are closely related to or allege an injury caused by the state court judgment. *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017). A plaintiff may not avoid this result by framing claims as constitutional and state law violations. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 557 (7th Cir. 1999) ("[A] litigant may not attempt to circumvent the effect of Rooker-Feldman and seek a reversal of a state court judgment simply by casting the complaint in the form of a civil rights action."). Indeed, as the Seventh Circuit explained, "[i] t is of no consequence that [the plaintiff's] complaint does not challenge specifically the agreed order. Nor is it relevant that he has characterized his grievance as a civil rights claim. To determine whether *Rooker–Feldman* bars a claim, we look beyond the four corners of the complaint to discern the actual injury claimed by the plaintiff." *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008). Thus, the Court must analyze each of Plaintiff's claims and the related allegations to determine whether such claim is barred under *Rooker-Feldman*. If the crux of Plaintiff's complaint seeks to challenge the state court proceedings, then this Court lacks subject matter jurisdiction.

Count I is barred. In it, Plaintiff purports to assert a claim under the Fair Housing Act, 42 U.S.C. § 3613, and 42 U.S.C. § 1985. But she alleges Defendants Association, Westward, and Girard sought an invalid eviction order for possession of the Unit and monetary gain. (Compl. ¶ 119, Dkt. 5). Plaintiff also claims that Defendant Judges Stacey and J. Wright, who were aided and abetted by Judge K. Wright, violated the rules related to service and "due diligence" and entered an eviction order during a federal moratorium on evictions. (*Id*. at ¶¶ 120, 121). As to Defendants Peterson and Lugo, Plaintiff claims that they failed to address alterations to the record, which allegedly affected the outcome of Plaintiff's appeal. (*Id.* at ¶ 122). Regarding Defendant Justices Delort, Connor, Martin, and Reyes, Plaintiff alleges that, rather than vacate the eviction order on appeal, they "aided/abetted" their "peers in the state court." (*Id.* ¶ 123). Finally, as to Defendants Wagner and Bennett, Plaintiff alleges their actions aided and abetted those "in the courtroom and in the backroom." (*Id.* at ¶ 126). The allegations in Count I clearly demonstrate that Plaintiff is attempting to challenge the unsuccessful collection action and appeal in state court.

Count II is barred. In it, Plaintiff purports to assert a cause of action under Title VII of the Civil Rights Act and 42 U.S.C. § 1982 and fares no better than Count I. Plaintiff alleges that Defendant Judges Stacey and J. Wright, Defendants Girard, the Association, and Westward used an invalid eviction order to "coerce ouster" of tenants in the Unit. (*Id.* ¶ 134). Plaintiff also alleges that Defendant Judge K. Wright had knowledge of this misconduct but failed to act. (*Id.* ¶ 135). Additionally, Plaintiff alleges that Defendant Wagner's report, which was allegedly endorsed by Defendant Bennett, swept FHA violations under the rug because Plaintiff's case "implicates judicial officers." (*Id.* ¶ 133). Like Count I, Count II is nothing more than a challenge to the state court proceedings.

Count III is barred. In it, Plaintiff purports to assert a cause of action under the Fourteenth Amendment Due Process Clause and 42 U.S.C. § 1983. Plaintiff alleges that her due process rights were violated in multiple ways, including: (1) Defendants Westward, the Association, and Girard making false statements in the state court proceedings, (2) Defendant Judges Stacey and J. Wright's "willful disregard" of laws regarding service of process; (3) Defendants Peterson and Lugo's handling and certification of a corrupt record; (4) Defendant Justices Delort, Connors, Martin, and Reyes' "lack of statutory compliance and misuse of Rule 23," and (5) Defendants Wagner and Bennett's failure to comply with the IDHR's procedures. (*Id.* ¶ 138). All these allegations, with the potential exception of those related to any failure of Defendants Wagner and Bennett to comply with IDHR procedures, directly relate to the state court proceedings.

Count IV is barred. In it, Plaintiff purports to assert a claim under the Fair Debt Collection Practices Act. Plaintiff alleges that Defendants Girard, the Association, and Westward violated the FDCPA by attempting to collect payments from Plaintiff before, during, and after the state court litigation. (*Id.* ¶ 142). This is an improper collateral attack on the money judgment entered against Plaintiff.

Count V is barred. In it, Plaintiff purports to assert a § 1981 claim against the Association for breaching the bylaws by failing to provide Plaintiff with an account statement. (*Id.* ¶ 155). On its face, a separate cause of action against the Association for failure to provide an account statement, independent of the state court actions, appears to be a possibly viable claim. However, Plaintiff complained throughout the collection action and appeal about not timely receiving an

account statement to prove she paid her assessments. (*See id* at ¶¶ 69-78). Because that "defense" was heavily litigated (and rejected) in the state court proceedings, Plaintiff cannot relitigate it here.

Count VI and Count VII are also barred. In those, Plaintiff asserts causes of action for injunctive relief and compensatory relief, respectively, based on the alleged violations in Counts I through V. Thus, these claims are also intertwined with the state court proceedings.

In sum, each of Plaintiff's claims in some way is a collateral attack on the state court eviction proceedings, which clearly fall within the category of actions barred by the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp. v. Saudi Basic Indus.Corp.*, 544 U.S. 280, 284 (2005) (Under *Rooker-Feldman*, federal district courts lack subject matter jurisdiction over "cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). As mentioned above, while Plaintiff's allegations related to the IDHR investigation and the Association's failure to provide an accounting statement may be independent of the state court proceedings, it is extremely difficult to conclude as such simply because, in numerous instances, Plaintiff alleges all these parties essentially acted in concert with each other. Thus, ruling on even the potentially unrelated claims would likely require the Court to examine the state court proceedings. *See Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 405 (7th Cir. 2023) ("[T]he only way a federal court could determine the merits of [corruption] allegations would be to review the state court's handling of the case from top to bottom, substantively and procedurally.").

Accordingly, Plaintiff's Complaint is dismissed under the *Rooker-Feldman* doctrine and pursuant to Federal Rule of Civil Procedure 12(h)(3), which compels the Court to dismiss an action "[i]f the court determines at any time that it lacks subject matter jurisdiction[.]" Such dismissal is without prejudice to pursuing any valid claims in an appropriate state court. *See Jakupovic v. Curran*, 850 F.3d 898, 904 (7th Cir. 2017). Because the operative complaint is dismissed for lack of subject matter jurisdiction, Plaintiff's motion for default [58] is denied. *See Boshnjaku v. Fed. Republic of Yugoslavia*, No. 01 C 4608, 2002 WL 1575067, at *4 (N.D. Ill. July 18, 2002) (denying motion for default where case was dismissed for lack of subject matter jurisdiction). All pending motions are terminated as moot.

Because Plaintiff is *pro se*, the Court will grant her an opportunity to attempt to file an amended complaint consistent with this ruling by 6/3/24. The Court emphasizes that Plaintiff can potentially pursue only those claims that do not arise out of or are not related to the state court collection proceedings. The Court will review any amended complaint to determine if it may proceed. If Plaintiff does not file an amended complaint by the stated deadline, this case will be closed without further court order.

Date: 5/13/24                                    /s/ LaShonda A. Hunt
                                                 United States District Judge